BRAUN LUMBER CORP. *v.* HARTWICK.

1. Joint Adventures—Imputed Knowledge.
   Knowledge of one joint adventurer in regard to property to be acquired by him and his associate for mutual profit is imputable to said associate.

2. Same—Fraud—Imputed Knowledge.
   Where one joint adventurer had knowledge that part of certain parcel of land which he and his associate were acquiring for mutual profit had been platted, neither said associate nor corporation to which assignment was made may maintain action for alleged fraud in concealing fact of said platting, lessening value of said land for industrial purposes.

Appeal from Wayne; Dehnke (Herman), J., presiding. Submitted April 19, 1933. (Docket No. 8, Calendar No. 36,622.) Decided October 2, 1933.

Assumpsit by Braun Lumber Corporation, a Michigan corporation, against Karen B. Hartwick and others for fraud. Judgment for plaintiff. Defendants appeal. Reversed, without a new trial.

*Frederick J. B. Sevald* and *Daniel P. Cassidy* (*Norman P. Lasca*, of counsel), for plaintiff.

*G. Leslie Field* and *E. Reed Hunt* (*Louis E. Hart*, of counsel for defendants Karen B. and Edward N. Hartwick, and *Charles E. Gallup*, of counsel for defendant Olaf N. Michelson), for defendants Karen B. and Edward N. Hartwick, Wescott, Olaf N. Michelson, Hoover, Ledwidge, Fluent, and Van Paris, administrator of estate of Axel E. Michelson, deceased.

*Ralph E. Routier*, for defendants James W. Hartwick and Pratt.

*Gilbert W. Hand* (*Edward S. Clark, Sr.*, and *Hubert J. Gaffney*, of counsel), for defendant Ford.

*Edward N. Barnard*, for defendant Frye, administrator of estate of William H. Kittle, deceased.

*Trowbridge, Lewis & Watkins* (*Edwin C. Lewis* and *Leonard A. Keller*, of counsel), for defendants Bess L. Michelson and Bess L. Michelson and John A. MacIvor, executors of will of Frank L. Michelson, deceased.

WIEST, J. Joseph A. Braun and William H. Kittle planned to acquire at least 76 per cent. of the stock of the Hartwick Lumber Company and then merging the Hartwick Lumber Company and the Braun Lumber Company into a new corporation, and, in furtherance of the plan, Mr. Kittle, who was vice-president and general manager of the Hartwick Lumber Company, procured from the stockholders in that com-

pany an option granting "J. A. Braun and associates" an option to purchase their shares within 90 days. This option was not exercised, however, but the record discloses that Mr. Kittle was the associate referred to, and this is manifested by the association agreement between Braun and Kittle, dated four days later. We quote from that agreement:

"This agreement made and entered into this 29th day of January, 1926, between J. A. Braun, hereinafter referred to as the party of the first part, and W. H. Kittle, hereinafter referred to as the party of the second part, both of the city of Detroit, and State of Michigan, witnesseth

"Whereas, the party of the first part is desirous of obtaining an option of all or at least 76 per cent. of the stock of the Hartwick Lumber Company, and

"Whereas, said party of the second part is in a position to obtain such said stock control, and

"Whereas, said parties hereto are desirous of merging the Hartwick Lumber Company, and the Braun Lumber Company, into a new corporation, to be known as the Braun-Hartwick Lumber Company, or such other name as may be mutually agreed upon, and

"Whereas, said parties hereto are desirous of being mutually interested in the said Braun-Hartwick Lumber Company, and

"Whereas, an option of purchase of the shares of stock of the Hartwick Lumber Company has been taken in the name of J. A. Braun and associates, it is hereby declared that said associates in said option is the party of the second part to this agreement, and said agreement is attached hereto and made a part hereof, the purpose of said option being to acquire the control of said Hartwick Lumber Company, with the fixed intent of consolidating said properties with the Braun Lumber Company, and the affiliated

companies of the Braun Lumber Company having title to the realty used in the business of said Braun Lumber Company.

"Now therefore, the parties hereto mutually covenant and agree to-wit:

"That the Braun-Hartwick Lumber Company shall have seven directors, of which three shall be named by each of said parties to this agreement, the seventh director being named by the bankers instrumental in financing said merger. * * *

"It is agreed that in the event of the consolidation of the Hartwick Lumber Company, and the Braun Lumber Company, and its affiliated companies, that the real estate and improvements of said companies are to be reappraised by the American Appraisal Company of Milwaukee, and that the other assets shall be valued by Price, Waterhouse & Company on like terms and conditions, for the purpose of said merger.

"It is further agreed, that all profits arising from the purchase of the said shares of stock of the Hartwick Lumber Company in said merger shall be equally divided in preferred stock of the new-created corporation of the Braun-Hartwick Lumber Company by the said party of the first part and the party of the second part, that in determining the profits arising therefrom, the proportional interest of the said party of the second part shall be credited with the full reappraisal value of his interest in the said Hartwick Lumber Company.

"It is further agreed, that in the issuance of the no-par value stock of the said Braun-Hartwick Lumber Company, the same shall be apportioned in the ratio of 85 per cent. to the party of the first part, and 15 per cent. to the party of the second part. * * *

"It is further stipulated and agreed that said parties hereto shall so pool their interests in the newly-formed corporation, so as to perpetuate the representation upon its board of directors, and the

election of said officers hereinbefore referred to for a period of five years from the date hereof, and said party of the second part hereby agrees to remain with said newly-formed corporation for a period of five years from the date hereof.

"It is further agreed that for a period of two years from the date said merger becomes effective, that the salaries of said parties hereto, shall be fixed and payable monthly at the rate of $36,000 per annum each, and at the end of the two-year period, that said salaries shall be readjusted as the financial condition and earnings of the company justify, but at all times shall be equal in amount. * * *

"It is hereby agreed and stipulated that said contract attached hereto, together with the two copies of this agreement, which are hereby declared to be the only copies in existence, shall be deposited in a safety box of the Security Trust Company, and shall be available of access only upon the joint application of the parties hereto or their heirs, in the event of the death or incapacity of either of the parties hereto. * * *

"It is agreed that in the event the option attached hereto is exercised, and the merger planned herein is fulfilled, that this agreement shall be in full force and effect for five years from the date hereof."

This agreement was signed by Mr. Braun and Mr. Kittle. As we have said, that option was not exercised. Neither was the Braun-Hartwick Lumber Company created by merger, but, on April 30, 1926, Mr. Braun was given a new option by all of the stockholders of the Hartwick Lumber Company for the purchase by him of their shares of stock at a price to be determined in a manner specified. This option was exercised by Mr. Braun on July 7, 1926, and assigned by him to the Braun Lumber Corporation on July 8, 1926, and that corporation furnished the money to pay the Hartwick stockholders. The

Braun Lumber Corporation filed its articles of association June 28, 1926, was organized by and through the efforts and direct action of Mr. Braun and Mr. Kittle, and Mr. Kittle was a director and vice-president from the time of its organization until some time in 1927, and he acquired 10 per cent. of the class B stock of that corporation and $80,000 of the class A stock and received a salary of $36,000 per year. In 1928 Mr. Kittle severed his connection with plaintiff corporation, and Mr. Braun acquired his stock.

Among the property acquired under the exercised option were 21 acres of land, suitable for industrial purposes and appraised in the deal at $189,000.

The suit at bar was brought to recover damages from the stockholders of the Hartwick Lumber Company on the ground that they concealed the fact that a portion of this 21-acre parcel had been platted and streets and alleys therein dedicated to the public, lessening its value for industrial purposes. The tract at the time of the trial was vacant property and intact. Plaintiff had judgment for one-half of what it had paid for the tract, or $94,500, together with interest thereon, or a total of $121,143.75. Defendants prosecute review.

The agreement between Mr. Braun and Mr. Kittle, from which we have quoted, although relating to an option not exercised, has a direct bearing upon the subsequent and exercised option, for that agreement was carried out by Mr. Braun and the Braun Lumber Corporation in every detail, with the slight exception that Mr. Kittle obtained 10 per cent. of the class B stock instead of 15 per cent. While Mr. Braun and Mr. Kittle contemplated turning the stock purchase over to the corporation to be formed, and in which they were to be directors and officers and

have large salaries, they also intended to make the turnover at a nice profit, to be divided between them, and they succeeded. Mr. Braun is the principal stockholder of the Braun Lumber Corporation. The platting of a part of the tract in question was contemplated by the Hartwick Lumber Company, in connection with an adjoining subdivision, before any option was given to Mr. Braun and was carried out in fact before Mr. Braun exercised the option, and was good business judgment in case Mr. Braun failed to exercise the option.

Mr. Kittle was active in forming the Braun Lumber Corporation, and joined with two others in executing the articles of incorporation on June 23, 1926, and was designated therein as director and vice-president.

In obtaining the option and acquiring the Hartwick Lumber Company property and the organization of the Braun Lumber Corporation, Mr. Braun and Mr. Kittle were engaged in a joint venture for their mutual profit, and if Mr. Kittle knew about the platting, neither Mr. Braun nor the plaintiff corporation can complain of want of similar information by Mr. Braun, for whatever Mr. Kittle knew is imputed to his associate, and the corporation can have no relief not open to its assignor. Mr. Kittle knew all about the platting. He was vice-president of the Hartwick Lumber Company and was active in the management of that company. Mr. Kittle was a principal in the acquiring of the stock of the Hartwick Lumber Company, and his actual knowledge of the true situation is, under a salutary rule of law, to be held as well the knowledge of his coprincipal. Mr. Braun looked to Mr. Kittle to obtain the option, and, had each stockholder informed Mr. Kittle that the tract had been platted, such notice would have

bound his associate, Mr. Braun, and the effect is no less the same where Mr. Kittle had full knowledge of the platting.

Mr. Kittle not only had full knowledge of the platting but wanted evidence to lay before his associate. Some time in May, 1926, and while Mr. Braun and Mr. Kittle were acting in concert toward accomplishment of their joint purpose, Mr. Kittle, whom defendant Karen B. Hartwick considered, and rightly so, Mr. Braun's representative, asked her for a blueprint of the plat to give to Mr. Braun, and she directed him to where it could be procured. Mr. Kittle was in California at the time of the trial, gave no testimony, and is now dead.

We hold that, under the relation between Mr. Braun and Mr. Kittle, whatever Mr. Kittle knew about the property was, in point of law, equally the knowledge of Mr. Braun. Plaintiff made no case.

The judgment is reversed, without a new trial, and with costs to defendants.

McDONALD, C. J., and POTTER, SHARPE, NORTH, FEAD, and BUTZEL, JJ., concurred. CLARK, J., took no part in this decision.